IN THE

# SUPREME COURT OF JUDICATURE,

OF THE

## STATE OF NEW JERSEY,

AT MAY TERM, 1836.

---

RULIFF VAN DIKE v. THE ADMINISTRATORS OF CATHARINE VAN DIKE, DECEASED.

By the 6th *Section, Rev. Laws,* 411, an action of debt on an obligation for the payment of money only, must be commenced within sixteen years after the cause of action shall have accrued on such bond, and not after; but if any *payment* shall have been made on the bond within or after the sixteen years, then an action within sixteen years after such payment shall be good, but the plaintiff must prove that the endorsements were on the instrument at or recently after the time they bear date, before such endorsements can be read in evidence as proof of payments and that they were made by or with the consent of the obligor.

In an action of debt on a money bond, if the defendant pleads in bar, that the action was not commenced within sixteen years after the cause of action accrued, the plaintiff ought to reply specially showing a payment; and that the action had been commenced within sixteen years thereafter. Such replication affords the defendant an opportunity to take issue upon the fact of payment, without the proof of which the plaintiff cannot recover. *Hornblower, C. J.*

VOL. III.—19

This cause was tried before the Judges of the Inferior Court of Common Pleas in and for the county of Somerset, and verdict and judgment rendered in favor of the plaintiff.

The plaintiffs' declaration contained two counts; 1st, on a bond dated 1st May 1797, in the penal sum of two hundred pounds, equal to five hundred thirty-three dollars and thirty-two cents. 2d count, for divers goods, wares and merchandize, money lent and advanced, money paid and expended, and for interest.

The defendant pleaded *non est factum;* payment; and the statute of limitation, as follows—and for a further plea in this behalf the said Ruliff Van Dike, by leave of the court here for that purpose first had and obtained according to the statute in such case made and provided says,—that the said Garret Beekman and Robert Chambers, administrators of Catharine Van Dike, deceased, ought not to have or maintain their aforesaid action thereof against him, because he says, that the said supposed cause of action in the first count of the said declaration mentioned, did not accrue at any time, within sixteen years, before the commencement of this suit, in manner and form as the said Garret Beekman and Robert Chambers, administrators as aforesaid, have above thereof complained against him, the said Ruliff Van Dike, and this he is ready to verify, wherefore he prays judgment, if, &c. . And for a further plea in this behalf, the said Ruliff Van Dike, by leave of the court here for that purpose first had and obtained according to the form of the statute in such case made and provided, says, that the said Garret Beekman and Robert Chambers administrators as aforesaid ought not to have, or maintain their aforesaid action against him, because he says, the said several supposed causes of action in the second count of the said declaration mentioned, did not, nor did any or either of them accrue at any time within six years next before the commencement of this suit, in manner and form, as the said Garret Beekman and Robert Chambers administrators as aforesaid, have above thereof declared against him, and this he is ready to verify wherefore he prays judgment of, &c.

The plaintiffs joined issue in the usual form on the pleas of *non est factum* and payment.

The replication of the plaintiffs to the pleas of the statute of limitation, is as follows—"as to the plea of the said Ruliff secondly above pleaded, the said Garret and Robert administrators as aforesaid say, that they ought not by reason of any thing in that plea contained, to be barred from having or maintaining their aforesaid action thereof against him, because they say that the cause of action in the first count of the said declaration mentioned, accrued within sixteen years next before the commencement of this suit, and this they pray may be enquired of by the country, and the said Ruliff doth the like— and as to the plea of him the said Ruliff Van Dike thirdly above pleaded, the said Garret and Robert administrators as aforesaid, say that they ought not to be barred from having or maintaining their aforesaid action thereof against him by reason of any thing in that plea contained, because they say, that the several causes of action in the said second count of the said declaration, did accrue within six years next before the commencement of this suit—and this they pray may be enquired of by the country, and the said Ruliff doth the like.

The following is a copy of the bill of exceptions sealed at the trial and sent up with the record to the Supreme Court.

" This cause came on to be tried on this seventeenth day of April, in the year of our Lord eighteen hundred and twenty-eight, before the Judges of the Inferior Court of Common Pleas in and for the county of Somerset, upon the issues joined between the parties, (pro ut the same,) and before a jury duly impannelled and sworn to try the same ; and thereupon the said plaintiffs in support of the issues in their part offered in evidence a bond dated the first day of May, in the year of our Lord one thousand seven hundred and ninety-seven, (pro ut the same,) and called James D. Stryker, Esquire, who being duly sworn said, that he was acquainted with the hand writing of John Van Dike the subscribing witness, that he had seen the said John Van Dike frequently write, and that he believed that the signature as subscribing witness to bond was in the proper hand writing of the said John Van Dike. The witness

further stated, that he was acquainted with the hand writing of Ruliff Van Dike, and that he believed the signature as obligor to the said bond was in the proper hand writing of the said Ruliff Van Dyke, and that the bond is in the hand writing of the said Ruliff Van Dike; and thereupon the said plaintiffs read in evidence the said bond, and offered to read the endorsements on the said bond dated August the seventeenth, in the year eighteen hundred and eleven, and May the fourth, in the year eighteen hundred and fourteen, (pro ut the same,) to the reading of which said endorsements the counsel for the said defendant, objected and prayed of the court that the same might be over-ruled as illegal and incompetent, but the court were of the opinion, that the said endorsements were legal and competent, to which opinion of the court, the defendant excepted and prayed that this his bill of exceptions might be allowed and sealed, and it was accordingly allowed and sealed.

The plaintiffs having rested, the defendant offered Cornelius Kershow, as a witness, who being duly sworn, said that he was one of the appraisers to the estate of Catharine Van Dike, deceased; that at the time of the taking the appraisement, there was some dispute about the bond, between Ruliff Van Dike and the administrators. He alleged that the bond had been paid; that the bond was found in the drawer of Catharine Van Dike's work stand; there were no other papers in the drawer but the bond and the military commission of her father. The bond or note against Hutchinson, and the other obligations of the deceased, were in a small trunk kept for that purpose. Garret Beekman, one of the plaintiffs, took the bond from the drawer of the work stand, as the witness thinks. On being cross examined the witness stated, that Ruliff Van Dike first said, that he knew of no such bond; he then said that he had a receipt gainst it—Ruliff Van Dike said that he could not find the receipt. He said that the bond was cancelled, and was paid. The word doubtful placed before this bond in the appraisement was so entered by the appraisers. He thinks that there was a lock to the drawer in which the bond was found. Vandike Voorhees was the other appraiser. Ruliff Van Dike the defendant said, that he did not know there was such a bond in

existence against him. He did not deny it; appraisement partly taken at the tavern, and partly at the house of the defendant.

The defendant then offered Alexander Van Dike as a witness, who being duly sworn said—that he had several times done business for Catharine Van Dike in her lifetime, that she had received some bad money she thought from Daniel Polhemus, and requested the witness to return it, that sometime the latter part of January, or the beginning of February eighteen hundred and twenty-seven, as witness was going to the barn, Catharine Van Dike stood in the kitchen door, and witness on the porch; she called the witness to her and said she felt very bad, as if she was not long for this world, she asked the witness if he would accept of a present of five dollars, the witness replied yes, and received the same. She then said I hold a bond against your uncle Ruliff Van Dike. I have promised him to destroy it, I have not done so, but it makes no difference, it is of no consequence. Witness then asked if she had any other demands against him, and she said, that she had not. He then asked her, if they had had a settlement, and witness believes that she said yes. On cross examination, the witness stated that he went to Daniel Polhemus some little time before the conversation before detailed; how long before he does not recollect, it was less than three months: the present he received from Catharine Van Dike, was for the business he had done for her: witness did not know, that there was any unsettled matters before this time between Ruliff and Catharine, she stood in the door and he in the porch, they were not in conversation a great length of time, she did not show the bond to the witness, she was able to go about at that time; the witness does not recollect, that Catharine Van Dike named the time when she promised to cancel the bond.

The next day or the day following, the witness asked Ruliff Van Dike, if she, the said Catharine held a bond against him, and he said no. She had promised several years ago to destroy it, and he presumed she had done so. Witness did not mention the conversation, that he had had with Catharine Van Dike to Ruliff Van Dike, witness thought it was not his business and did not meddle with it; he was not in the habit of talking with

Ruliff Van Dike about his bonds ; witness does not recollect that Ruliff Van Dike said that he had paid the bond, but he said that he had settled. Witness did not mention to Ruliff Van Dike, that he had had a conversation with Catharine, till after her death. He does not recollect that he mentioned it to any body, he might have mentioned it to some of the family.

On examination in chief, the witness states, that Catharine Van Dike, in the said conversation, mentioned that the bond was for one hundred pounds, and that John Van Dike the father of the witness, was the subscribing witness to the bond ; and the witness on examination of the bond now in the court and shown to him, says, that his father is the subscribing witness to the same.

The defendant having rested ; the plaintiffs offered Catharine Gulick as a witness, who being duly sworn did say, that she was acquainted with Catharine Van Dike in her life time ; that witness lived with her in the same house ; that she saw Catharine Van Dike have the bond a little better than a week before she died ; she showed it to witness ; she wanted to know how long interest had been paid on it; she came down stairs with the bond ; Catharine Van Dike kept the little trunk up stairs ; witness has heard Ruliff Van Dike say, that he had paid the bond, but never heard him say so before the death of Catharine Van Dike; witness has heard Ruliff Van Dike say, that the money last paid on the bond, was intended for principal, but it was put down for interest; the time was not recollected, but it was after the bond was found ; he said that it was more than the payment of interest; this being paid for principal, he thought the thing was out-lawed.

The counsel for the plaintiff then asked the said witness " whether Catharine Van Dike when she brought the bond down stairs to show it to witness ; stated her reasons for so doing, and what those reasons were, to which said last questions the said defendant by his counsel objected, and insisted that the same were illegal and incompetent ; and the plaintiffs by their counsel insisted that the same were legal and competent. Whereupon the said court delivered the opinion that the said questions were legal and proper, and admitted the same to be asked, to which

Van Dike *v.* Administrators of Van Dike.

said opinion of the said court the said defendant by his counsel excepted and prayed a bill of exceptions, and that the same might be allowed and sealed, and the same is allowed and sealed accordingly."

*J. S. Green,* for the plaintiff in error, cited *Roseboom* v. *Billington,* 17 *Johns.* R. 182; *Moreland* v. *Bennet,* 1 *Strange* 652; *Rose* v. *Bryant,* 2 *Camp.* 321; *Hoar* v. *Coryton,* 4 *Taunt,* 560, 1 *Starkie on Evid.* 311; 2 *Halst.* 113; 2 *Penn. R.* 702.

*W. Halsted,* for defendants in error cited, 1 *Starkie on Evid.* 271; 1 *Phil. on Evid.* 115; *The Trent Navigation Co.* v. *Harley,* 10 *East.* 34; *Short* v. *Lee,* 2 *Jac. and Walk.* 489; 1 *Barnard R.* 432.

HORNBLOWER, C. J. This was an action of debt on a bond brought by the defendants in error against the plaintiff in error. The bond was given on the 1st of May 1797, payable in one year after date. This action was commenced in the year 1827; being thirty years after the bond was given, and twenty-nine years after it became due. The defendant pleaded 1st, *non est factum;* and 2dly, that the cause of action did not accrue any time within sixteen years before the commencement of the suit. To this second plea, the plaintiffs replied generally, that the cause of action did accrue within sixteen years before action brought. On the trial of the cause, the execution of the bond having been sufficiently proved, the plaintiffs read the same in evidence to the jury; and also offered to read to them certain indorsements on the bond, purporting to be receipts or memorandums of money paid thereon; one of which was dated the 17th August 1811, and the other on the 4th May 1814.

To the reading of these endorsements, the defendant objected, but the court overruled the objection, and they were read in evidence.

The question principally discussed on the argument of this cause, was, whether it was competent for the plaintiffs to read these endorsements, as proof of payments made on the bond, without showing that they had been made by, or with the

consent of the obligor. But the view I have taken of the case, renders it unnecessary to examine that point.

By the 6th *Section* of the statute, *Rev. Laws,* 411, it is enacted that every action of debt, on a bond for the payment of money only, shall be commenced, and sued within sixteen years, next after the cause of such action shall have accrued, and not after; but, if any payment shall have been made, *within* or *after* the said period of sixteen years, then an action instituted on such bond, within sixteen years after such payment, shall be good and effectual in law and not after.

This bond was dated the 1st May 1797, payable in òne year thereafter. The cause of action therefore *accrued* on the 1st or 2d of May 1798. The first payment indorsed on the bond, was on the 17th of August 1811, which was within the sixteen years, the second was on the 4th of May 1814, which was two or three days after the expiration of the sixteen years. This action was commenced in 1827, which was more than sixteen years after the first indorsement, but within sixteen years after the last endorsement. So, that if this action çan be maintained, it must be, because the defendant made the payment mentioned in the second indorsement.

Whether that payment could be given in evidence upon the trial of the issue joined in this case, so as to avoid the bar, is the question.

While the defence rested on presumption at the common law, it was competent for the plaintiffs to overthrow it by the admissions of the party; by partial payments, or any other circumstances, inconsistent with such presumption, or destruction of the ground upon which it was erected. But the statute has entirely abolished the doctrine of presumption, and made *time* a positive and effectual bar. It was so decided by this court in the case of *Marston* y. *Seabury, Penn. R.* 702, *Harr. ed.* 516. The action must now be brought, either, within sixteen years, after it accrued, or within sixteen years after the last payment made on the bond. If therefore a defendant pleads in bar, that the action was not commenced within sixteen years after the cause of action accrued, and the plaintiff takes issue upon that plea, he must show a bond, which became due

and payable within sixteen years previous to the commencement of the action. Such an issue will not be supported by producing a bond of thirty or forty years standing, and then proving a payment within the last sixteen years—making a payment, on a bond, does not *create* a right of action; it only *saves* or *continues*, by force of the statute, a pre-existing cause of action. It takes away the bar, and gives the obligee sixteen years more, within which to prosecute his original cause of action. The plaintiffs ought therefore to have replied specially, showing a payment, and that the action had been commenced within sixteen years thereafter. Such replication would have afforded the defendant an opportunity to take issue upon the fact of payment; a fact which lies at the foundation of the plaintiffs' right of action; which the statute has made material, and therefore traversable, and without proof of which, the plaintiffs cannot recover.

I am aware, that this view of the subject, may, at first sight appear to conflict, with the doctrine, applicable to pleas of the statute of limitations, in actions of assumpsit. But upon a little reflection, it will be perceived to be in perfect accordance with it. It is true, if a defendant, in assumpsit, pleads, *non-assumpsit*, or, *actio nonaccrevit infra sex annos;* and issue be thereupon joined, the plaintiff supports the issue on his part (according to the old cases) by simply proving an acknowledgment of the debt, or a partial payment of it, within six years before action brought. But why? not because such acknowledgment or payment avoided the bar; but because they amounted by implication of law, to a new promise, *creating* and *giving rise* to *a new cause of action;* so that, the issue is strictly maintained, and the action is thereby shown to have been brought within six years from the time *it* accrued; that is, from the time the constructive or implied promise was made. The doctrine upon this subject is fully and distinctly stated in the case of *Marston* v. *Seabury,* before cited. And in that case, and subsequently, in the case of *Ludlow* v. *Decamp,* 2 *Halst. R.* 113, this court solemnly decided, that a bond, barred by the statute of limitations could not be revived, even by an *actual* and *express* promise of payment. In the latter case too, the court

took occasion to show, that in assumpsit, the bar, is not avoided, by mere acknowledgment that the debt once existed, or is now due, but that the action is revived by the *new promise*, implied from such acknowledgment. But no such implication can arise in the case of a bond.

In actions on bonds, before the statute, evidence of acknowledgments, or partial payments made within the twenty years, was admitted, not to give the plaintiff a new cause of action, or to revive the old one; but only to repel a presumption. The object of proving payment now, under the statute, is very different: it is to bring the plaintiff within a saving in the statute, and to establish his right to sue upon the bond, notwithstanding the cause of action upon it, accrued more than sixteen years before the action brought. Like all other *savings* in the statute of limitations, it must be specially replied to a plea that invokes the protection of that statute. My opinion therefore is, that the court erred, in admitting the plaintiffs to prove payments, in any way, under the issue joined in this case. Such evidence was a surprise upon the defendant; and not within the issue. Nor can the plaintiffs derive any benefit from the evidence given on the trial, of the defendant's admissions that he had given such a bond, and made payments upon it. Such admissions, even if accompanied, with an actual promise of payment, it has been decided by this court in the cases of *Marston* v. *Seabury*, and *Ludlow* v. *Van Camp*, above cited, would not revive a bond once barred by the statute of limitations.

For these reasons I am of opinion the judgment must be reversed. But at the same time I am fully prepared to concur in the opinions which will be expressed by my associates on the other point, namely, that under no state of pleadings could such endorsements be read in evidence without proof that they had been made by, or with the consent of the obligor, or actual proof that such payments had been made.

FORD, J. An action of debt, on an obligation for the payment of money only, must be commenced within sixteen years after the cause of action shall have accrued on such bond, and not after, according to the provisions of our statute; but if

Van Dike *v.* Administrators of Van Dike.

any *payment* shall have been made on the bond, within or after the sixteen years, then an action within sixteen years after such payment, shall be good. *Rev. Laws*, 411, *sec.* 6.

If the holder's endorsement of a dollar or a cent received on an old bond, and his dating such endorsement within sixteen years, be evidence of a payment by the debtor, without any other proof thereof, the statute will afford no defence whatever against an old bond, and may just as well be repealed ; for what creditor would not endorse a cent or two on a bond, to revive it after it had become barred by the statute ; or in order to extend it for sixteen years longer when nearly expiring ? All the debtor's security would be placed at the will and pleasure of the holder of the bond, under such a decision. An endorsement made by the holder in his own favor, not even under his own oath of the truth of it, or the oath of any other person, cannot be evidence on any principle that is known in law. In 2 *Campl. N. P.* 231, the court said, it saw no principle on which such evidence could be received. In 17 *Johns.* 182, the court said, a man's act should be no evidence for him ; it was repugnant to every sound principle of law. ELLENBOROUGH, C. J. said in *Rose* v. *Bryant,* 2 *Campl.* 321, " you must prove that the endorsements were on the instrument, *at* or *recently after* the times they bear date, *before* you are entitled to read them in evidence." The admission of them without any fresh evidence in this case, was therefore manifestly erroneous.

But if such evidence would have been receivable to rebut a presumption at the common law, our statute does not place the revival of the bond on any presumption, it requires proof of the *fact* of payment by the debtor ; and I am not prepared to say that any writing made by the *holder* in his own favor, though proved to be made *at* the time it bears date, would be evidence of the important fact he is bound to make out by the statute. The question, however, does not come up in this case and I do not mean to prejudice it. Judgment must be reversed.

RYERSON, J. The action below was in a plea of debt. One count in the plaintiff's declaration, was on a bond dated in 1798, and payable some short time thereafter. The suit was commenced in 1827. The defendant among other things, plead

that the cause of action did not accrue within sixteen years next before suit brought. The plaintiffs replied that it did. The parties agreed to waive all technical questions arising out of the pleadings, and the conformity of the proof thereto; and try the fact, whether the plaintiffs had any subsisting cause of action, when the suit was brought.

On the trial, the bond was produced and proved, and read in evidence. Several endorsements of payments had been made thereon. Some of these were also read without objection. But when the plaintiffs proposed to read an indorsement of a payment, purporting to have been made in 1811—and another in 1814, without other evidence respecting the same, than their *existence* on the bond, the defendant objected. The court overruled the objection, and allowed the same to be read. To this opinion of the court below, a bill of exceptions was tendered and sealed.

This bill of exceptions presents the question, whether such indorsement, simply and alone, without other evidence, direct or indirect, when, or by whom made; whether before or after the bar had arisen from lapse of time; or whether made with or without the privity of the obligor, can be received as evidence to prove a payment within sixteen years, and thus give the plaintiffs the benefit of the saving clause in our statute of limitation?

The general principles of our law are against it. No man shall be allowed to make evidence for himself. And the admission of these indorsements would certainly be contrary to the opinion of the elementary writers whom I have consulted. *Phil. Ev.* 114, 1 *Starkie, Ev.* 311. The reported case which I have found, going the greatest length in support of the evidence in question, is *Searle, Executor of Searle* v. *Ld. Barrington, Administrator, &c.* Of this case there are several reports in print—of which, I have examined particularly the two most likely to be accurate; one to be found in 2d *Strange*, 826, the other in 2d *Ld. Ray.* 1370. The result of the inspection of the *two* reports, is that the indorsement was under the hand of the obligee, who had been dead at least five years before the common law presumption of payment commenced. Of course

Van Dike *v.* Administrators of Van Dike.

the indorsement had an existence, in a commanding position, as evidence against the obligee, at a time when it was not his interest to feign a payment, and every presumption must have been that it was made with the privity of the obligor. The *facts* of the case, therefore, will not warrant the doctrine sometimes attempted to be extracted from it, at least as those facts are presented by STRANGE, and in which so far as material, he is not *contradicted* by LORD RAYMOND. Some of the *dicta* reported to us as having fallen from the court in that case, go beyond the case itself, but have been extensively and I believe generally questioned and disapproved of since by Judges and annotators. I feel fully warranted, therefore, in saying that the Supreme Court of New York, in *Roseboom* v. *Billington,* 17 *John R.* 182, have gone at least as far as the law will warrant, in their resolution: that in the absence of proof of the privity of the obligor to the indorsement, such indorsement must be shown to have had *an actual existence,* before it was the interest of the holder of the instrument, to make it. No such proof was made in the case now before us, and in my opinion, it was not lawful to read the receipts in evidence. The judgment of the court below is therefore erroneous, and must be *reversed.*

*Judgment reversed.*

SAME *case,* 2 *Harr.* 478 ; CITED in *Disborough* v. *Bidleman's Heirs, Spencer,* 277.