**DVL, INC., f/k/a Del–Val Financial Corporation, Plaintiff,**

v.

**Jeffrey S. MUTNICK, Defendant.**

**No. 98Civ. 8393(MBM).**

United States District Court,
S.D. New York.

July 6, 2000.

Jonathan M. Herman, Moon S. Kim, Dorsey & Whitney LLP, New York, NY, for Plaintiff.

Jacobs & Simms, New York, NY, for Plaintiff.

Robert E. Deright, Jr., New York, NY, for Defendant.

OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff DVL, Inc. sues defendant Jeffrey Mutnick for breach of contract based on Mutnick's failure to make payments due under a promissory note that he signed in 1985. Mutnick moves for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the ground that DVL's claim is time-barred. DVL cross-moves for summary judgment, arguing that when Mutnick joined a class action settlement in 1992, he made a new

promise to pay the debt and that promise restarted the statute of limitations. For the reasons set forth below, Mutnick's motion is granted, DVL's cross-motion is denied, and the complaint is dismissed.

## I.

The relevant facts are undisputed. On December 9, 1985, Mutnick executed a promissory note (the "Note") in connection with his purchase of a one-unit limited partnership interest in Sonya Associates Limited Partnership. (Def.Ex. C) The Note included a payment schedule and provided that Mutnick would be in default if, *inter alia,* he failed to pay any installment within 10 days of the date it was due. (*Id.* at 1) In the event of a default, Mutnick would become obligated to pay the remaining note principal and accrued interest, plus additional interest on the unpaid principal from the date of default, as well as costs of collection and attorney fees. (*Id.* at 1–2) Sonya assigned the Note to its sponsor, Kenbee Management, Inc.; the Note was reassigned to DVL. (*Id.* at 2–3)

Mutnick made all of the payments due on the Note through 1989. (Mutnick Aff. ¶ 5) By letter dated October 23, 1990, Kenbee informed Mutnick that it was suspending distributions from Sonya because Sonya was unable to meet its financial obligations. (*Id.* ¶ 6 & Def. Ex. D) Mutnick responded by letters dated November 13, 1990 and December 20, 1990, demanding his distribution and an accounting. (Mutnick Aff. ¶ 7 & Def. Ex. E) Mutnick did not make the December 31, 1990 payment due on the Note. (Pl. SMF ¶¶ 3, 16)[1]

In early 1991, class action litigation ensued in federal district court in New Jersey against various Kenbee limited partnerships, including Sonya. (*Id.* ¶ 4) The litigation settled in 1992. (Def. SMF ¶ 13)[2] In connection with the settlement, Mutnick signed a document on December

4, 1992 titled, "Proof of Claim and Release and Substitute Form W–9." (Def.Ex. G) It provided: "By submitting this Proof of Claim, I state that ... I have read and understood the contents of the Notice ... and that I desire to participate in the proposed ·Settlement described in the Notice." (*Id.* at 1) The "Notice" referred to in the proof of claim was the "Notice of Class Action Certification, Proposed Class Action Settlement" dated August 24, 1992, which, in turn, incorporated as its Appendix B various excerpts from an August 12, 1992 "Stipulation of Settlement." (Def.Ex. F) Among those excerpts were provisions under which settling class members acknowledged that each note remained "a valid and enforceable obligation," and received a grace period until October 30, 1992 in which to cure any default in payments on their notes. (*Id.* at B–2)

After signing the proof of claim, Mutnick still did not make any further payments on the Note (Pl. SMF ¶ 3), and DVL began this action in New York State Supreme Court on October 30, 1998 (*id.* ¶ 17), arguing that Mutnick was in default. Mutnick removed the case to this court on November 25, 1998 on the basis of diversity jurisdiction, and the parties now cross-move for summary judgment.

## II.

Mutnick argues that summary judgment is warranted because DVL's suit is time-barred. The Note at issue contains a choice-of-law clause stating that it should be construed in accordance with the laws of the State of New Jersey. (Def. Ex. C ¶ 7) Moreover, the parties rely on New Jersey law, and such "implied consent ... is sufficient to establish choice of law." *Tehran–Berkeley Civil & Envtl. Eng'rs. v. Tippetts–Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir.1989).

---

**1.** "Pl. SMF" refers to Plaintiff's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, filed on October 28, 1999 (Dkt. No. 17).

**2.** "Def. SMF" refers to Defendant's Statement of Material Facts As To Which There Is No Genuine Issue To Be Tried, filed on September 28, 1999 (Dkt. No. 16).

Under New Jersey law, the statute of limitations for contract actions is six years. *See* N.J. Stat. Ann. § 2A:14–1 (West 1999). In this case, the Note provides that if Mutnick failed to make a required payment, he would be in default 10 days after that payment had been due. (Def. Ex. C ¶ 4) Mutnick failed to make his December 31, 1990 payment (Pl. SMF ¶¶ 3, 16), meaning that he would have been in default as of January 10, 1991. DVL began this action on October 30, 1998 (*id.* ¶ 17), well after the six-year limitations period. Therefore, on its face, this lawsuit appears time-barred.

■■■ However, the inquiry does not end there. New Jersey law provides that the enforceability of a debt barred by the statute of limitations can be revived by a new promise to pay the debt (assuming certain requirements, such as a writing, are met).[3] Significantly, the mere acknowledgment of the debt is not sufficient to restart the statute of limitations. Rather, there must be a new promise to pay the full amount of the debt immediately or on demand:

An acknowledgment or promise to pay an existing debt is deemed to constitute a new contract; therefore, it must support the implication of a promise to pay the full amount due immediately or on demand, whether made before or after the statute of limitations has run. . . . Currently, there is a tendency in favor of the statute of limitations and against the construction of a statement as an acknowledgment or promise which will avoid its operation.

*Burlington County Country Club v. Midlantic Nat'l Bank S.*, 223 N.J.Super. 227, 538 A.2d 441 (1987) (citing, *inter alia*, *Denville Amusement Co. v. Fogelson*, 84 N.J.Super. 164, 201 A.2d 380, 383 (1964); *Bassett v. Christensen*, 127 N.J.L. 259, 21 A.2d 776, 777 (1941)) (internal quotation marks omitted).

DVL argues that three provisions binding Mutnick constituted an acknowledgment sufficient to revive the limitations period.[4] Principally, DVL cites ¶ 2.11(D) of the stipulation, which provides:

Each Settling Class Member shall make all payments due on each Limited Partner Note directly to the Limited Partner Note Secured Party at the address specified in writing from time to time by the Limited Partner Note Secured Party. If any Limited Partner is currently in default in making payments on a Limited Partner Note, such Limited Partner shall have until October 30, 1992 to cure any such default by making payment to the Limited Partner Note Secured Party of any unpaid installments of principal, together with interest thereon at the contract rate set forth in the Limited Partner Note through the date of payment. In the event that the Limited Partner Note Secured Party does not receive payment on or before October 30, 1992, then the Limited Partner Note Secured Party shall have the right to enforce the Limited Partner Note in accordance with its terms.

---

**3.** N.J. Stat. Ann. § 2A:14–24 provides in pertinent part:

In actions at law grounded on any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, so as to take any case out of the operation of this chapter, or to deprive any person of the benefit thereof, unless such acknowledgment or promise shall be made or continued by or in some writing to be signed by the party chargeable thereby.

**4.** Notwithstanding Mutnick's assertion to the contrary (Def. Mem. at 6), by signing the proof of claim Mutnick became bound by the terms of the settlement as outlined in the settlement notice and the stipulation attached to the notice. (Def. Ex. G ¶ III) ("By submitting this Proof of Claim, I state that . . . I have read and understood the contents of the Notice . . . and that I desire to participate in the proposed Settlement described in the Notice.") As explained in the text, however, absent a new promise to pay an existing debt, the provisions of the notice and stipulation cannot revive Mutnick's obligation to DVL.

(Def. Ex. F at B–2) DVL similarly stresses that ¶ 2.11(B) states that each settling class member confirms that each note at issue "is a valid and enforceable obligation of such Settling Class Member." (*Id.*) Finally, DVL points out that ¶ 22 of the notice states that class members "ratify their obligations under the notes." (*Id.* at 4)

■ None of these provisions contains a new promise to pay an existing debt under New Jersey law. To restart the statute of limitations, an acknowledgment must support the "implication of a promise to pay at once or on demand." *Bassett*, 21 A.2d at 777. In *Bassett*, for instance, a debtor wrote a letter to his creditor that opened with a candid acknowledgment of the extent of the debtor's liability: "My record of indebtedness to you is as follows: Original loan $2,000 dated June 8, 1929—Interest paid to you $300." *Id.* at 776. But because the writer never promised to pay the remaining debt—only expressing an interest in "discuss[ing] the subject ... after [he had] something definite to offer"—the Court held that there was not a sufficient basis for removing the bar of the statute of limitations. *See id.* Thus, the explicit acknowledgment of a debt does not itself constitute a promise to pay justifying revival of the limitations period.

Here, ¶ 2.11(D) does not constitute a new promise to pay. That paragraph offered settling class members a grace period during which those with outstanding payments due on limited partnership notes could cure their defaults. The paragraph gives the address to which payments were to be directed, the date by which payments had to be made (October 30, 1992), and the effect of failing to pay. (Def. Ex. F at B–2)

Though implicitly acknowledging that settling class members may have additional payments due, nowhere does the paragraph contain an express promise to make those additional payments. The suggestion that ¶ 2.11(D) constitutes a new promise because it states that "[e]ach Settling Class Member shall make all payments due on each Limited Partner Note" (Pl. Mem. at 13–14) takes that statement out of context: The continuation of the sentence ("shall make all payments due on each Limited Partner Note directly to the Limited Partner Note Secured Party at the address specified in writing ...") simply states the location to which payments should be sent, but does not contain a promise to send them.

Furthermore, ¶ 2.11(D) expressly addresses the creditors' rights if the debtors do not pay by the end of the grace period. (Def. Ex. F at B–2) ("In the event that the Limited Partner Note Secured Party does not receive payment on or before October 30, 1992, then the Limited Partner Note Secured Party shall have the right to enforce the Limited Partner Note in accordance with its terms.") That statement does not contain a new promise to pay. Most tellingly on the facts of this case, Mutnick signed the proof of claim on December 4, 1992. (Def. Ex. G at 2) Plainly, he could not thereby have been making a promise to pay as of October 30, 1992—a date that already had passed.

Paragraph 2.11(B) likewise does not contain a promise to pay. All it does is to acknowledge that each note remains "a valid and enforceable obligation." (Def. Ex. F at B–2) Much as the debtor in *Bassett* described his debts, but did not take the additional step of promising to pay them, *see* 21 A.2d at 777, so did Mutnick here. Moreover, ¶ 22 simply summarizes the Stipulation by stating that "the Stipulation contains many other provisions relating to these notes, including a provision that Class members ratify their obligations under the notes and waive any right of setoff and defenses to these notes." (Def. Ex. F at 4) That statement is no more than a description of the obligations agreed to by settling class members in other provisions of the stipulation, as ¶¶ 2.11(B) & (D); it does not purport to impose any obligations beyond those specified elsewhere. Accordingly, none of the

provisions cited by DVL embodies a new promise to pay that could revive the statute of limitations.

Finally, DVL's suggestion that Mutnick waived his right to assert a statute-of-limitations defense is meritless. The stipulation's waiver clause, on which DVL relies, explicitly describes the relevant representations as being made "as of the Effective Date" of the settlement. (Def. Ex. F at B–2) Accordingly, by agreeing to waive defenses as of that date, Mutnick did not waive a statute-of-limitations defense that had not yet come into being—and would not for several more years.[5]

In sum, there is no basis for restarting the statute of limitations and DVL's claim against Mutnick therefore is time-barred. Because there is no genuine issue as to any material fact, Mutnick is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

\*    \*    \*    \*    \*    \*

For the foregoing reasons, Mutnick's motion for summary judgment is granted, DVL's cross-motion for summary judgment is denied, and the complaint is dismissed.

---

**5.** Because the waiver clause on its face does not apply to the statute-of-limitations defense, I need not decide whether a waiver of such breadth would be contrary to public policy.