BURLINGTON COUNTY COUNTRY CLUB, PLAINTIFF, v.
MIDLANTIC NATIONAL BANK SOUTH, EARL B.
HOWE, ET AL., DEFENDANTS.

Superior Court of New Jersey
Chancery Division Burlington County

Decided December 14, 1987.

228

*Janet Brownlee Miller* for plaintiff (*James Logan*, Jr., attorney).

*Francis J. Hartman* for defendant Earl B. Howe (*Francis J. Hartman*, attorney).

*Joanne Rizzo* for defendant Midlantic National Bank South (*Parker, McCay & Criscuolo*, attorneys).

HAINES, A.J.S.C.

The Burlington County Country Club ("club") issued a series of 51 (out of an offering of 75) $1000, 6%, 20–year mortgage bonds on July 1, 1930. A mortgage covering the club's golf course secured the bonds. Burlington City Loan and Trust Company, the original trustee named in the mortgage, has been replaced by Midlantic National Bank South,

The bonds, as well as the mortgage called for semi-annual interest payments commencing January 1, 1932, with the entire principal due July 1, 1950. No interest or principal has ever been paid in accordance with these terms but most of the bonds have been retired as the result of negotiated partial payments to bondholders. Earl B. Howe owns seven bonds.[1] They are said to be the only ones outstanding. The trustee is authorized to foreclose the mortgage upon the club's failure to pay an installment of interest within six months of its due date and in the event of a failure to pay the principal when due. However, foreclosure is permitted only when requested by 25% of the bondholders. That request has never been made.

The club has issued stock to its members. Its bylaws provide:

No person shall have registered on the books of the corporation more than one share of stock.

---

[1] He can find only three bonds; however, his testimony as to the ownership of seven bonds was not only convincing but uncontradicted.

In the event of the dissolution of the Club, its property after paying off its debts and obligations, shall belong to and be distributed among its shareholders equally.

All bondholders were also stockholders.

The bylaws also established a class of life members, consisting of all bondholders. "A Life Member, together with all members of his family permanently residing in his household except male members twenty-one years of age and over, shall be exempt from the payment of entrance fees and dues."

The club filed this summary action on February 13, 1987, seeking cancellation of the mortgage which secures Howe's bonds. It relies upon *N.J.S.A.* 2A:51-1 which authorizes such cancellation on proof that the mortgage has been paid, or upon the making of a deposit with the court of the amount due thereon, or upon proof of "such special circumstances as to satisfy the court that the mortgagee and his successors, if any, in right, title and interest have no further interest in the mortgage or the debt secured thereby." The club relies on the latter provision. It also offers Howe without prejudice $500 a bond and a life membership in the club in exchange for his bonds. He has refused that offer in the past and does so now. He opposes the cancellation of the mortgage and crossclaims for substitution as its trustee on the ground that he holds the club's only outstanding bonds and is the only party in interest. He has not counterclaimed.

The cause has been tried. This opinion disposes of all issues, concluding that the complaint must be dismissed.

The club was unable to produce any comprehensive records relating to its stock transactions or to the bonds and mortgage in question. Available documents were marked into evidence. Some facts were stipulated. The club, apparently having no alternative, called as its only witness the defendant, Earl B. Howe. The facts, based upon these proofs, are found to be as set forth in this opinion.

The club placed 13 bonds, with various attachments, in evidence. These were the only bond records it could find. They show that:

In 1967 the Club paid Bertha M. Herbert and Emma R. Brick each $500 for their bonds and $150 each for their stock.

In 1970 the Club paid Leona F. Conroy an undisclosed price for her bond.

In 1975 the Club paid James F. Marshall $500 for his bond.

In 1976 the Club paid Robert R. Taylor $500 for his bond.

The club's proofs also show that most of the remaining bonds (perhaps all but Howe's) were redeemed through partial payments to bondholders negotiated by counsel.

## *The Statute of Limitations.*

The club's suit is premised upon the claim that the statute of limitations has run against the mortgage, a claim which Howe disputes. The club's burden of proof was satisfied by its showing that the statutory period of limitations has run. It then became Howe's obligation to prove otherwise. The club's records, produced in response to Howe's demand, show offers of payment and payments which may toll the statute or revive the bond obligations.

The club's bonds and the mortgage securing them are sealed instruments, sometimes referred to as "specialties." *In re Harris,* 101 *N.J.Eq.* 5, 7 (Ch. 1927). *N.J.S.A.* 2A:14–4 provides:

Every action at law ... founded upon ... an obligation under seal conditioned for the payment of money only ... shall be commenced within 16 years next after the cause of any such action shall have accrued. If, however, any payment is made on any such ... recognizance ... within or after such period of 16 years, an action thereon may be commenced within 16 years next after such payment, and not thereafter.

A cause of action on a debt arises when the debt becomes due because that is the point at which an action can be maintained to enforce the obligation. *Richman v. Richman,* 10 *N.J.L.* 114, 115 (Sup.Ct.1828). Howe's cause of action on his bonds accrued on January 1, 1950, when the full principal amount due on the bonds was not paid. *Richman* held (though not as clearly as one would like) that as long as any cause of

action was available as to any part of a bond, the limitations period had not run. *Id.* at 116. As to Howe, that period expired on July 1, 1966, 16 years after the date the principal became payable. However, the statutory period may be interrupted, extended and revived by payments on account and by acknowledgements of the debt. Howe claims that such events occurred. His claims require further discussion.

■ Before they are addressed, however, the right to the affirmative use of the statute of limitations for the purpose of cancelling a mortgage and barring the underlying indebtedness must be addressed. The issue has been decided adversely to the club. In *Hollings v. Hollings*, 8 *N.J.Super.* 552 (Ch.Div. 1950), aff'd 12 *N.J.Super.* 57 (App.Div.1951), a plaintiff in a quiet title action sought, in effect, to remove a mortgage of record on the ground the statute of limitations prevented its collection. The court, noting that money was still owed on the mortgage and that the statute merely served to bar the collection remedy, held that a plaintiff seeking equity must do equity. The moral obligation to pay the debt must be honored before relief can be obtained. This telling conclusion ended the court's opinion:

> We consider that the circumstances presented are in no significant sense distinguishable from the customary situation in which courts throughout the country have applied the prevailing rule that a mortgagor or a grantee morally obligated to pay the mortgage debt barred by limitations must do equity by tendering its payment before seeking affirmative relief in an action to quiet title. [12 *N.J.Super.* at 60]

*See also Lake Waterloo v. Kestenbaum,* 10 *N.J.* 525 (1952). For this reason alone the complaint must be dismissed.

■ It is also true, as Howe claims, that the period of limitations has not run against the club's obligation. The debt has been revived by payments on account after the period expired. In this connection it must be recognized that the bonds issued by the club reflected but one indebtedness divided among 51 bondholders. The total debt was set forth in the

mortgage as a single sum. The terms of the bonds and the mortgage contain the following. For example:

> This bond is one of a series of 75 bonds of like denomination, form, tenor and date and numbered consecutively from 1 to 75 both inclusive, which said series of bonds is limited in the amount of $75,000 and is secured by a certain trust deed or mortgage of even date herewith....

The mortgage provides, in case of a sale of the mortgaged property as the result of default, that the sale proceeds shall be applied

> [to] the payment of the whole amount of principal and interest which shall then be owing or unpaid upon the bonds secured hereby, without any preference or priority whatever, ... and in the case of the insufficiency of such proceeds to pay in full the whole amount of such principal and interest owing and unpaid upon the said bonds, then to the payment of such principal and interest pro rata, without preference or priority but ratably to the aggregate amount of such principal and accrued and unpaid interest.

The mortgage further provides that it shall be held in trust

> for the benefit, security and protection ... of said bonds and interest, and without preference, priority or distinction as to lien or otherwise, of any of said bonds over any of the others by reason of priority in time of the issue or negotiation thereof, or otherwise....

In the event the mortgaged property is sold, the sale proceeds must be applied

> [to] the payment of the whole amount of principal and interest which shall then be owing or unpaid upon the bonds secured hereby, without any preference or priority whatever ...,

with pro rata payments to be made if the proceeds are insufficient to pay the entire amount due. Any surplus is to be paid to "whomsoever may be lawfully entitled to receive the same," *i.e.*, creditors and stockholders, if the club is being liquidated.

Thus, the bonds are to be considered as part of one transaction, each reflecting a $1000 share in a single indebtedness. Any payment of monies due on one bond was a payment on account of the entire principal amount borrowed through the sale of all 51 bonds. Each bond retired reduced the total debt by $1000. The mortgage then secured the reduced total debt evidenced by the remaining bonds. Under the revival rules applied here, each payment provided the remaining bondholders

with an additional 16 years from the date of payment within which to enforce the club's obligation.

Our rules are partly statutory and partly judge-made. The statutes were adopted in 1877 and have had no amendments of any moment here; most of our cases were decided in the 19th Century. Nevertheless, they represent the law today and therefore require discussion. The basic law appears in *N.J.S.A.* 2A:14–4, which provides in part:

> If, however, any payment is made on any such ... specialty ... within or after such period of 16 years, an action thereon may be commenced within 16 years next after such payment, and not thereafter.

*N.J.S.A.* 2A:14–24 provides in part:

> In actions at law grounded on any simple contract, no acknowledgment or promise by words only shall be deemed sufficient evidence of a new or continuing contract, so as to take any case out of the operation of this chapter, or to deprive any person of the benefit thereof, unless such acknowledgment or promise shall be made or continued by or in some writing to be signed by the party chargeable thereby.

. . . .

> Nothing in this section shall take away, lessen or alter the effect of any payment of principal or interest made by any person whatsoever on the obligation in suit.

Our courts, interpreting the statutes, have held that a statute of limitations which applies to a presently existing contractual debt or obligation may be tolled by an acknowledgment or a promise to pay. *Howell v. Wallace*, 18 *N.J.Misc.* 48, 51 (Cir.Ct. 1939). Likewise, if such acknowledgment or promise to pay is made after the statute has run, it will act to revive the debt for the statutory period. *Trenton Banking Co. v. Rittenhouse*, 96 *N.J.L.* 450, 452 (E. & A.1921).

■ Acknowledgments must be in writing in order to satisfy the statute. *N.J.S.A.* 2A:14–24, in setting forth this requirement, refers to actions brought on a "simple contract," best defined as one involving a legal operation not dependent upon form or mode of expression. *Corbin, Formal and Informal Contracts*, § 5. The term has not been defined in our cases

and it is not clear how the writing requirement applies to a sealed instrument, such as a bond. Logically, however, if a writing is required for a "simple contract," it must be required as well for a sealed contract. It does not appear, however, that the acknowledgment of a debt due on a sealed contract need be sealed. *Miller v. Teeter,* 53 *N.J.Eq.* 262 (Ch.1895).

■ An acknowledgment or promise to pay an existing debt is deemed to constitute a new contract; therefore, it must support the implication of a promise to pay the full amount due immediately or on demand, whether made before or after the statute of limitations has run. *Bassett v. Christensen,* 127 *N.J.L.* 259, 261 (E. & A.1941); *Denville Amusement Co., Inc. v. Fogelson,* 84 *N.J.Super.* 164, 170 (App.Div.1964). Currently, there is a tendency "in favor of the statute of limitations and against the construction of a statement as an acknowledgment or promise which will avoid its operation". *Ibid.* (citing 54 *C.J.S., Limitation of Actions,* § 302 at 368–369).

■ Payment of or on account of a debt or obligation may also toll or revive the statute of limitations, thereby extending it for the statutory period from the time of such payment. *Van Dike v. Adm'rs. of Van Dike,* 15 *N.J.L.* 289, 296–297 (Sup.Ct. 1836). Such payment may consist of either interest or principal. *Fidelity Union Trust Co. v. Fitzpatrick,* 134 *N.J.L.* 250, 252 (E. & A.1946). *N.J.S.A.* 2A:14–24, dealing with acknowledgments, recognizes this result by providing that:

> Nothing in this part shall take away, lessen, or alter the effect of any payment of principal or interest made by any person whatsoever on the obligation in suit.

■ When a partial payment is made after the statutory period has run, the party seeking to revive the statute must show (1) that the payment was partial, and (2) an act or declaration which establishes the debtor's recognition of, and intention to pay, the entire claim. *Renault v. L.N. Renault & Sons,* 90 *F.Supp.* 630, 636 (E.D.Pa.1950), rev'd on other grds. 188 *F.*2d 317 (3 Cir.1951); *Trenton Banking Co. v. Ritten-*

*house, supra,* 96 *N.J.L.* at 452–453. Mere payment is not enough. *Romaine v. Corlies,* 47 *N.J.L.* 108, 109 (Sup.Ct.1885).

These principles must be applied to the facts of this case, facts which require some further exposition.

The club has made payments ranging from $500 to $650 to various bondholders in full satisfaction of the amounts due each of them. These payments were made in the years 1967, 1970, 1975 and 1976. If they satisfy the tests established by our cases, they revived Howe's cause of action. Were these payments only partial? Did the club in making them, recognize and intend to pay the entire indebtedness? The answers to both questions are in the affirmative.

It is entirely clear that the club's payments to bondholders, during the years in question, were partial as to the total debt, though not as to any individual bonds. Compromise payments on the bonds were full, not partial payments. However, they were both partial as to the club's total debt (originally $51,000) and a recognition of its existence. The club admits that it made *no* payments of principal or interest on any bonds except the compromise payments. Those payments, part of a continuing effort to retire the entire bond-mortgage debt, were payments on account of that debt and therefore partial.

The payments also satisfied the recognition test. When the club retired most of its bonds for less than the principal amounts due, it recognized *some* obligation to each bondholder, an obligation which was part of the overall debt. It is sufficient for recognition purposes that "the debt be identified as one larger in amount than the payments involved." *Trenton Banking Co., supra,* 96 *N.J.L.* at 452. When a claim consists of a fixed amount known to both parties, a payment on account necessarily recognizes the total claim. *Vaughan v. Hankinson's Adm'r.,* 35 *N.J.L.* 79, 84 (Sup.Ct.1871). The total claim was the entire bonded debt of the club. It was not obliged to make the simple arithmetical calculation needed to determine that claim in order to recognize its existence.

No compromise payment was made with respect to the entire debt or with respect to the individual debts owed the bondholders whose bonds were not redeemed. Such compromise payments are admissible in evidence to prove the revival of the total debt:

> Evidence that a person has, in compromise ..., furnished ... money ... to another who has sustained or claimed to have sustained loss or damage is inadmissible to prove his liability for the loss or damage or any part of it. This rule shall not affect the admissibility of evidence (a) of partial satisfaction of an asserted claim on demand without questioning its validity, as tending to prove the validity of the claim, or (b) of a debtor's payment or promise to pay all or part of his pre-existing debt as tending to prove the creation of a new duty on his part, or a revival of his pre-existing duty. [*Evid.R.* 52]

The comment to this rule states: "The rule is not designed to work any change in the New Jersey substantive law regarding the revival of pre-existing claims which but for a debtor's payment or promise might be barred by the statute." *Rules of Evidence,* Comment *Evid.R.* 52 (Anno 1988).

The club's successive payments to numerous bondholders evidenced its recognition of the fact that a debt existed over and above the amount paid to each. The reason for effecting the compromise settlements is not known. Perhaps the club lacked funds with which to pay its entire debt, perhaps limitations questions were raised. No proofs were presented to show that the club ever denied the validity of any bondholder claims. The fact of compromise suggests problems but also underlines the club's belief that it had a central obligation which it was intent upon retiring. Its actions recognized that obligation.

██ New Jersey has adopted the minority view with respect to co-debtors. A payment made by any co-debtor on account of a claim before the statute of limitations has run, tolls the statute as to all co-debtors. *Parker v. Butterworth,* 46 *N.J.L.* 244 (Sup.Ct.1884); *Corlies v. Flemming,* 30 *N.J.L.* 349 (Sup.Ct.1863). *Parker* held, however, that a payment made by a co-debtor *after* the statute has run does not revive the debt. Here, we have payments *to* co-creditors, not *by* co-debtors, a distinction which makes a difference. *Parker's* revival

holding was based on the theory that a payment on account made *before* the statute ran improved the position of all joint debtors by reducing the total amount due, but did nothing for co-debtors if made *after* the statute had run since they then could not be required to pay. 46 *N.J.L.* at 254. Here, we have but one debtor and numerous co-creditors. A payment to one co-creditor (bondholder) was advantageous to all remaining co-creditors because, by reducing the total debt, it increased the value of the mortgage security in which all had a joint interest. Logically, payment to one revived the debt as to all because it affected the interests of all. That is doubly so here since the bondholders were also stockholders and life members of the club. As stockholders, they were entitled to distribution of the club's assets in case of dissolution. Reduction of the club's debt increased their interest in its assets. As life members, they had a continuing interest in the solvency of the club and therefore in the reduction of its debt.

The Oklahoma Supreme Court reached an opposite conclusion with respect to co-creditors in *McKennon v. McKennon,* 104 *Okl.* 228, 231 *P.* 91 (Sup.Ct.1924). A key reason for that conclusion, however, was the fact that the money owed was not from a joint fund. The co-creditor who was paid had no interest in the balance due the other co-creditor. The opposite is true here. The Supreme Court of Utah also reached an opposite conclusion with respect to co-creditors in *Fredericksen v. Knight Land Corp.,* 667 *P.*2d 34 (Utah Sup.Ct.1983). Again, however, the decision turned on the fact that the debtor's liability was created by a limited partnership agreement which stated that all limited partners were acting alone and were not therefore joint obligees. Here, however, we are dealing with bondholders having a joint interest in the principal fund, jointly protected by a single mortgage.

Acknowledgments of the debt were claimed but not proved. Payments on account may constitute such acknowledgments but there is no need to consider that issue in this litigation.

## Conclusion.

For these reasons, the complaint of the club must be dismissed. The relief sought by crossclaim, substitution of Howe as trustee of the mortgage, however, will not be granted. There has been no showing that any past or present trustee has acted in any way that would call for removal. The only obligation of the trustee was and is to foreclose the mortgage and this is not permitted except upon the request of "25% in interest" of the bonds secured by the mortgage. There has been no showing that such a request was ever made.