**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3184-20

LALJI BHIMJI SANGHANI
and PREMWATI LALJI
SANGHANI,

     Plaintiff-Appellants,

v.

RAJESHKUMAR M. PATEL,
PARUL R. PATEL, MUKTA
DEVELOPER, LLC, VARSANG
REALTY, LLC, DIVYA GURU
LLC, ALEX REAL ESTATE
HOLDINGS LIMITED LIABILITY
COMPANY, ALEX 1997 LIMITED
LIABILITY COMPANY, ALEX
PROPERTY MANAGEMENT
LIMITED LIABILITY COMPANY,
ALEX PENHORM LIMITED
LIABILITY COMPANY, ALEX
SWAMIBAPA REAL ESTATE
LIMITED LIABILITY COMPANY,
TAYLOR BOEHEM LLC,
TAYLOR BOEHEM 2 LLC, ALEX
PATEL, and ROHITH PASULA,

     Defendants-Respondents.

_____

Argued June 8, 2022 – Decided August 5, 2022

Before Judges Hoffman, Whipple, and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-4558-20.

Brian M. Block argued the cause for appellants (Mandelbaum Barrett, PC, and Snellings Law, LLC, attorneys; Robert C. Scrivo, Brian M. Block, Robert S. Snellings, and Christopher B. de Blank, of counsel and on the briefs).

Peter M. Slocum argued the cause for respondents Rajeshkumar M. Patel, Parul R. Patel, Mukta Developer LLC, Varsang Realty LLC, Divya Guru LLC, Alex Real Estate Holdings LLC, Alex 1997 LLC, Alex Property Management LLC, Alex Penhorn LLC, Alex Swamibapa Real Estate LLC, and Alex Patel (Lowenstein Sandler, LLP, attorneys; Christopher S. Porrino and Peter Slocum, of counsel and on the briefs).

PER CURIAM

Between June 2005 and February 2009, plaintiffs, Lalji and Premwati Sanghani, made fourteen separate loans to defendant, Rajeshkumar Patel (Rajeshkumar),[1] totaling $3,485,000. The interest-bearing loans were used to fund a series of real estate ventures. Rajeshkumar defaulted on every loan,

---

[1] Because father-and-daughter plaintiffs share the same surname, we use their first names when necessary to distinguish between them. Moreover, because three of the defendants share the same surname, Patel, we use Rajeshkumar Patel's first name throughout the opinion. We mean no disrespect in doing so.

A-3184-20

eventually prompting plaintiffs to file suit. Plaintiffs appeal three May 26, 2021 Law Division orders entered by Judge Kimberly Espinales-Maloney dismissing their complaints with prejudice and discharging all lis pendens filed in connection with this litigation. The trial judge concluded that the first two loans, which were not reduced to writing, were unenforceable under the statute of frauds. Judge Espinales-Maloney also determined that the complaint regarding all fourteen loans was time-barred under the six-year statute of limitations. After carefully reviewing the record in light of the applicable legal principles and arguments of the parties, we affirm the dismissal of plaintiffs' complaint substantially for the reasons set forth in Judge Espinales-Maloney's comprehensive twenty-page written opinion.

I.

A.

We discern the following pertinent facts from plaintiffs' complaint, accepting them as true for purposes of our review of the trial court orders dismissing that complaint. Plaintiffs and Rajeshkumar were members of the

same religious congregation for over twenty years. Plaintiffs knew that Rajeshkumar was in the business of buying and developing real estate.[2]

In 2005, Rajeshkumar first sought money from plaintiffs to fund his real estate ventures. Between June 22, 2005 and February 5, 2009, plaintiffs made fourteen loans to Rajeshkumar for a combined principal amount of $3,485,000. All of the loans bore an annual interest rate of 15%. The first two of the fourteen loans were in the form of oral agreements, whereas the other twelve loans were memorialized in writing. Each loan pertained to the purchase or renovation of particular property, or to the operations of a particular company. Several of the loans were "demand" loans with no specified due date; others specified that payment was due one year after issuance. Rajeshkumar defaulted on each loan as it came due.

Because each loan was made as a separate and distinct transaction, we briefly describe them in chronological order. On June 22, 2005, Rajeshkumar requested $400,000 to purchase and renovate the former Lantana Restaurant in

---

[2] Rajeshkumar is a member of and controls defendants Mukta Developer LLC (Mukta), Varsang Realty LLC, Divya Guru LLC, Alex 1997 LLC, Alex Penhorn LLC, Alex Property Management LLC, Alex Real Estate Holdings LLC, and Alex Swamibapa Real Estate LLC. Along with defendants Alex Patel and Parul R. Patel, these defendants collectively are referred to as the "Patel defendants."

Secaucus. Plaintiffs granted the loan and tendered two checks to Rajeshkumar, each in the amount of $200,000.

On July 12, 2005, Rajeshkumar requested a loan in the amount of $200,000 for the construction of a Candlewood Suites in Secaucus. Plaintiffs again granted the request, issuing to Rajeshkumar a single check in the amount of $200,000. The same day, Rajeshkumar executed and delivered a promissory note for the $200,000 loan with the agreement that it would be repaid on July 12, 2006.

On November 9, 2005, Rajeshkumar requested and plaintiffs granted an additional $400,000 loan to be used for the acquisition and renovation of the Latana Restaurant. Neither of the two Latana Restaurant loans had a specific due date; nor was either memorialized in a contemporaneous writing.

When the Candlewood Suites loan came due on Jul 12, 2006, Rajeshkumar failed to make the required payment, putting the loan in default. While visiting the United States from his home country of India, plaintiff Lalji met with Rajeshkumar for the purpose of "perform[ing] an accounting of the principal and interest [then] due on the subject loans." At that meeting, Rajeshkumar assured Lalji that the Latana loan was "on track as agreed." The parties agreed to extend the loan due date, and Rajeshkumar tendered Lalji a check in the

A-3184-20

amount of $30,000, toward interest due, but "on the condition that it only be deposited when Rajeshkumar confirmed." Rajeshkumar never confirmed that there were sufficient funds in the account to support the check, but eventually tendered the $30,000 by wire transfer.

The parties had a second accounting meeting in the summer of 2007. At that meeting, Rajeshkumar agreed to pay back "the short-term loan" of $200,000. He also agreed to repay $237,500 in interest that had accumulated on the Candlewood Suites loan. Rajeshkumar tendered a check for $237,000, once again obtaining plaintiffs' agreement not to deposit the check unless he confirmed that funds were available in the checking account. He never did so, and the Candlewood loan amounts remained outstanding.

A few months later, in the Fall of 2007, Rajeshkumar and plaintiffs traveled together to India for a religious event, where they met again to discuss the defaulted loans. Lalji asked Rajeshkumar to keep the promise he made during the summer to repay at least the interest due on the loan if not the entire sum due. On November 25, 2007, Rajeshkumar tendered a check in the amount of $30,000. The check was returned for insufficient funds. Rajeshkumar tendered a second check on December 17, 2007.

6

On January 14, 2008, Rajeshkumar requested a $100,000 loan on behalf of Mukta, a limited liability corporation in which Rajeshkumar had an ownership interest "and/or otherwise controlled the assets," for the construction of townhouses in Secaucus (Cedar Lane Townhouses Project). Despite Rajeshkumar's previous defaults, plaintiffs agreed. The same day, plaintiffs tendered a check for the full amount requested. That loan was memorialized with a written promissory note in which Rajeshkumar promised to repay the loan with a due date of January 14, 2009.

On May 10, 2008, Rajeshkumar requested an additional loan of $60,000 for the Cedar Lane townhouse project. Plaintiffs agreed to loan the full amount requested. That same day, Rajeshkumar executed a written promissory note promising to repay the loan on May 10, 2009.

On June 2, 2008, Rajeshkumar requested a loan in the amount of $500,000 for the construction of office space for Mukta. Plaintiffs agreed to loan the full amount requested. The same day, Rajeshkumar executed and tendered a written promissory note memorializing his promise to repay the loan by June 2, 2009.

On July 1, 2008, both Lalji and Premwati returned to the United States for a visit. Plaintiffs and Rajeshkumar "met to perform an accounting of the principal and interest." At that meeting, Rajeshkumar assured plaintiffs that the

7

Latana, Candlewood Suites, and Cedar Lane Townhouse projects were "ongoing or near complete." He agreed to repay each loan upon the completion of each respective project. In response to plaintiffs' requests for, at minimum, payment toward interest due, Rajeshkumar tendered three checks totaling $97,500 under the Mukta account, with the understanding that plaintiffs would not deposit the checks without his confirmation of available funds. That confirmation never came.

On July 31, 2008, Rajeshkumar requested a loan to Mukta for the sum of $100,000 to be used for general operations. Plaintiffs agreed to loan the full amount requested. That same day, Rajeshkumar executed a written promissory note promising to repay the loan on July 31, 2009.

On August 14, 2008, Rajeshkumar requested an additional loan to Mukta for $150,000 to be used for general operations. Plaintiffs agreed to loan the additional amount requested. Rajeshkumar executed a written promissory note the following day in which he promised to repay the loan by August 15, 2009.

On September 5, 2008, Rajeshkumar requested yet another loan to Mukta for an additional $200,000 to be used for general operations. Plaintiffs agreed to loan the additional amount requested. Rajeshkumar executed another promissory note with a one-year term, making the loan due September 5, 2009.

After repeated inquiries from plaintiffs about the promised repayments, on September 9, 2008, Rajeshkumar tendered to plaintiffs a check in the amount of $9,750 as payment toward the interest on the Cedar Lane townhouse loan, and a second payment of $30,000 toward the interest accrued on the Candlewood Suites project.

On October 2, 2008, Rajeshkumar requested yet another loan to Mukta in the amount of $200,000 for general operations. Plaintiffs agreed to loan the full additional amount. That same day, Rajeshkumar executed a written promissory note promising to repay the loan by October 2, 2009.

On October 31, 2008, Rajeshkumar requested, and plaintiffs granted, another loan to Mukta in the amount of $75,000, under a promissory agreement, executed the same day, that set a one-year repayment deadline of October 31, 2009.

Five days later, on November 5, 2008, Rajeshkumar requested and plaintiffs loaned Mukta an additional $750,000, this time for the purchase and construction of the City View Apartments in Secaucus. Rajeshkumar executed a written promissory note promising to repay the loan on demand.

On December 9, 2008, Rajeshkumar requested, and plaintiffs granted, another loan to Mukta in the amount of $200,000, this time for the purchase and

9

renovation of a property located on Schopman Drive in Secaucus. Rajeshkumar executed a promissory note setting a one-year repayment term.

Rajeshkumar did not repay the $100,000 loan for the construction of townhouses in Secaucus when it came due on January 14, 2009.

On February 5, 2009, Rajeshkumar requested, and plaintiffs granted, another loan to Mukta for an additional sum of $150,000 to be used toward the purchase and renovation of the Schopman Drive property. That same day, Rajeshkumar executed a written promissory note promising to repay the loan on February 5, 2010.

On July 26, 2009, Lalji returned to the United States for the purpose of discussing "the payoff of the subject loans." On September 2, 2009, Rajeshkumar met with both plaintiffs at their Secaucus home. The parties agreed that the aggregate principal Rajeshkumar owed to plaintiffs totaled $3,485,000. Rajeshkumar showed plaintiffs documents related to the City View project, including "high level blueprints and calculations[,]" to convince them that the project was going to be very profitable and would eventually result in the repayment of all the money loaned to him for that project.

In light of the downturn of the United States economy, plaintiffs agreed to extend the repayment terms of the loans. The parties executed a hand-written

agreement in which Rajeshkumar agreed to repay the interest in two parts. For the interest due on the November 5, 2008 loan of $750,000 toward the City View project, Rajeshkumar agreed to pay plaintiffs $112,000. For the remaining loans, tendered between 2005 and 2009, Rajeshkumar agreed to pay $261,187.50 in accrued interest. Rajeshkumar gave plaintiffs three blank checks with the understanding they would not be deposited without Rajeshkumar's permission. That permission was never granted.

The parties met again the following summer of 2010, joined by Lalji's younger son, Praful Lalji Sanghani, for another accounting of the loans. Because the United States' economic situation had not improved, plaintiffs agreed to another extension of the repayment deadline "as soon as the economy started to recover."

The following summer, plaintiffs met with Rajeshkumar at their home again on August 21, 2011. Rajeshkumar requested "more time to pay off the loans as the economy was still recovering." Plaintiffs agreed to that request. In another hand-written document, Lalji calculated the interest due from 2009 to 2011. Rajeshkumar signed the document, agreeing to repay the $800,000 principal amount from the unpaid Latana Restaurant loan awarded in 2005, along with an additional $720,000 of interest that had accrued at a 15% rate.

11

On August 14, 2012, plaintiffs again met with Rajeshkumar at their Secaucus home to discuss the defaulted loans. In an effort to avoid a lawsuit in view of their "community relationship and being part of the same temple," plaintiffs tried to think of alternative means by which Rajeshkumar could repay them. They asked him to transfer the properties if he could not repay the loans associated with them. Rajeshkumar informed them that the various properties were encumbered by mortgages. Rajeshkumar offered to sell the properties to plaintiffs on the condition that they assume the outstanding mortgage debt, but plaintiffs declined. When plaintiffs inquired about the income from the Latana Restaurant project, Rajeshkumar advised them that the property was leased to a restaurant business but "that there wasn't much profit coming in . . . ." Plaintiffs nonetheless requested Rajeshkumar tender any rental income the property produced, but Rajeshkumar never did so.

In the spring of 2013, the parties met again. Rajeshkumar provided an update on the loans and projects, and assured plaintiffs the City View project, whose profits he intended use to pay off the rest of the loans, was still certain to be profitable. He showed plaintiffs updated plans and explained that the project had been modified from apartment units to townhouses, as they would be more profitable.

A-3184-20

The parties met again on July 8, 2014. When plaintiffs "tried negotiating to acquire Rajeshkumar's real estate holdings that had equity[,]" he informed them that due to the nation's economic situation, all five properties were encumbered by "interlocking" loans. According to Rajeshkumar, he owed $4.4 million to a bank for the City View property. When plaintiffs were told they would be required to pay an additional $1.2 million to acquire the project, they refused. Instead, the parties executed a written document (Reaffirmation Agreement) acknowledging the total loan amount currently due, which Rajeshkumar signed.

The parties met again on August 3, 2015; as Lalji was unable to make the trip, his eldest son Kanti attended the meeting in his place. At that meeting, Rajeshkumar informed them that "almost all of the units at the City View Project ha[d] been rented at an average rent of $2,500/month/unit and gross annual rent of about $420,000." He advised that all the rental income was going toward the mortgage payment. When plaintiffs requested a good faith check for $50,000, Rajeshkumar informed them that "due to his financial condition, he would not be able to make any large payments towards the principal and interest currently due under the Reaffirmation Agreement." He also refused their request for $5,000 monthly loan payments. He did, however, agree to repay the loan at a

rate of $2,000 per month, to be paid by certified funds due to the history of returned checks. The next day, August 4, 2015, Rajeshkumar paid $1,000 by certified check. He tendered an additional $1,000 certified check on August 14, 2015.

On June 1, 2017, Alex Penhorn, another LLC jointly owned and controlled by Rajeshkumar and Parul, purchased a Secaucus property on Penhorn Avenue for $2,700,000.

The parties and their representatives met again in the summers of 2017 and 2018 to discuss the loan repayments but Rajeshkumar informed them that he was still unable to repay the debt. Rajeshkumar agreed to plaintiffs' request that he provide financial information regarding Mukta, along with a summary of all equity and loans associated with the properties Rajeshkumar owned. He never complied.

When Lalji returned to the United States in the summer of 2019, he attempted to arrange a meeting or phone call "to discuss the payoff of the sums due under the Reaffirmation Agreement." Rajeshkumar first answered and promised to call back to set up a meeting. He refused to answer any further calls and the parties did not meet.

On November 20, 2019, plaintiffs' attorney sent Rajeshkumar an accounting of the principal and interest due on the defaulted loans, along with a demand for payment. At that time, the total balance due was $9,679,750, consisting of $3,485,000 in principal and $6,194,750 in net accrued interest.

B.

We next recount the procedural history of the litigation leading to this appeal. On December 11, 2020, plaintiffs filed a complaint in the Law Division asserting thirty-nine causes of action against multiple defendants. Plaintiffs also filed seven lis pendens to encumber real properties.

On February 15, 2021, the Patel defendants filed two motions, first to dismiss the complaint for failure to state a claim, pursuant to Rule 4:6-2(e) and, second, to discharge the lis pendens pursuant to N.J.S.A. 2A:15-7(b). The Pasula defendants[3] separately moved to dismiss the complaint under Rule 4:6-2(e) and to discharge all lis pendens on seven properties.

On April 16, 2021, Judge Espinales-Maloney heard oral arguments on the motions via telephone. On May 26, 2021, the trial court granted defendants' motions to dismiss the complaint with prejudice and also granted defendants'

---

[3] Rohith Pasula, Taylor Boehem LLC, and Taylor Boehem 2 LLC, are collectively referred to as the "Pasula defendants".

motions to discharge the lis pendens.  As we have noted, the judge rendered a

written opinion.

This appeal followed.[4]  Plaintiffs raise the following contentions for our

consideration:

> POINT I
>
> THE STANDARD OF REVIEW FOR A MOTION TO
> DISMISS BASED ON AFFIRMATIVE DEFENSES IS
> EXCEEDINGLY RIGOROUS.
>
> POINT II
>
> THE TRIAL COURT ERRONEOUSLY HELD THAT
> THE STATUTE OF FRAUDS APPLIED TO
> LANTANA LOAN AGREEMENTS 1 AND 2.
>
> POINT III
>
> THE FOURTEEN LOANS WERE NOT BARRED BY
> THE STATUTE OF LIMITATIONS BECAUSE IT
> WAS REVIVED BY [DEFENDANT'S] PARTIAL
> PAYMENT.

---

[4]  Plaintiffs' appellate brief indicates that plaintiffs appeal from the trial court's order dismissing Counts 1–14 and 18–29 of the complaint against the Patel defendants, and the order discharging the lis pendens.  We note that plaintiffs are not pursuing an appeal of the trial court's dismissal of the remaining claims (Counts 15-17 and 30- 39), which includes the entirety of the September 30, 2021 order dismissing all claims against the Pasula defendants.  The Pasula defendants did not file a timely answering brief in this appeal; as a result, on January 7, 2022, the Clerk of the Appellate Division issued an order to suppress any brief, or other papers on behalf of the Pasula defendants.

POINT IV

THE COURT SHOULD REVERSE THE DISMISSAL OF THE FRAUDULENT TRANSFER CLAIMS BECAUSE THE UNDERLYING CLAIMS ARE NOT TIME-BARRED.

POINT V

THE COURT SHOULD REVERSE THE ORDER DISCHARGING THE LIS PENDENS ON FOUR PROPERTIES.

II.

Because we affirm substantially for the reasons set forth in Judge Espinales-Maloney's thorough written opinion, we need not address plaintiffs' contentions at length. We add the following comments, beginning with a review of the law governing this appeal.

Pursuant to Rule 4:6-2(e), we review a trial court's ruling dismissing claims against a party applying a plenary standard of review that owes no deference to the trial court's conclusions. Bacon v. N.J. State Dep't of Educ., 443 N.J. Super. 24, 33 (App. Div. 2015) (citing Rezem Fam. Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div. 2011)). We therefore apply the same "test for determining the adequacy of a pleading" as does the trial court: "whether [the] cause of action is 'suggested' by the facts." Gonzalez v. State Apportionment Comm'n, 428 N.J. Super. 333, 349 (App. Div. 2012)

17

(quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

In making that determination, courts must afford the plaintiff "every reasonable inference of fact." Printing-Mart, 116 N.J. at 746 (quoting Indep. Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 (1956)). Courts should search the complaint "in depth and with liberality" when making such a determination, even though "[t]he inquiry is limited to 'examining the legal sufficiency of the facts alleged on the face of the complaint.'" State of N.J. v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015) (quoting Printing-Mart, 116 N.J. at 746).

Courts should dismiss a complaint for failure to state a claim pursuant to Rule 4:6-2(e) "only if 'the factual allegations are palpably insufficient to support a claim upon which relief can be granted.'" Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010) (quoting Rieder v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987)). Dismissal is only appropriate when "the pleading does not establish a colorable claim and discovery would not develop one." Ibid. (citing Camden Cnty. Energy Recovery Assocs. v. N.J. Dep't of Env't Prot., 320 N.J. Super. 59, 64 (App. Div. 1999)). A dismissal of a plaintiff's complaint "with-prejudice" will be reversed if it is "premature, overbroad[,] . . .

[or] based on a mistaken application of the law." Flinn v. Amboy Nat'l Bank, 436 N.J. Super. 274, 287 (App. Div. 2014).

The critical threshold question before us is whether plaintiffs' complaint was filed within the applicable statute of limitations. The general statute of limitations for a contractual claim is six years after accrual. N.J.S.A. 2A:14-1. "A cause of action based upon a money obligation which is payable on demand is deemed to accrue at the time of the loan." Denville Amusement Co. v. Fogelson, 84 N.J. Super, 164, 169 (App. Div. 1964). Under the Uniform Commercial Code (UCC), the statute of limitations for a promissory note payable at a definite time is six years after the due date stated in the note, N.J.S.A. 12A:3-118(a), and the statute of limitations for a promissory note payable on demand is six years after the demand. N.J.S.A. 12A:3-118(b). See Denville Amusement, 84 N.J. Super. at 169 (explaining that where no payment date is specified, the note is deemed to be payable on demand).

Importantly, plaintiffs acknowledge that "absent tolling or revival (as applicable), each loan and promissory note would have been time barred in December 2020 when suit was filed." Plantiffs' argument before the trial court and on appeal rests entirely on the applicability of a common law doctrine known as the "partial payment rule." Plaintiffs contend that the July 8, 2014

19

Reaffirmation Agreement revived the statute of limitations because, by signing, Rajeshkumar recognized the legitimacy of the debt owed and, by tendering the two $1,000 checks, affirmed his intention to repay the loans. Insofar as it demonstrated Rajeshkumar's renewed commitment to repaying the loans, plaintiffs argue the Reaffirmation Agreement restarted, and thereby extended, the statute of limitations for all fourteen loans until August 4, 2021.

The trial court carefully considered plaintiffs' partial payment rule argument in light of the governing case law and rejected it. We reach the same conclusion. Even accepting for the sake of argument that the common law partial payment rule applies to the UCC statute of limitations set forth in N.J.S.A. 12A:3-118, we agree with the trial court that the Reaffirmation Agreement and the ensuing tender of a $1,000 certified check does not satisfy the requirements of the partial payment rule as explained in <u>Burlington Cnty. Country Club v. Midlantic Nat'l Bank S.</u>, 223 N.J. Super. 227 (Ch. Div. 1987)). In that case, the court explained that

> "[w]hen a partial payment is made after the statutory period has run, the party seeking to revive the statute must show (1) that the payment was partial, and (2) an act or declaration which establishes the debtor's recognition of, and intention to pay, the entire claim. Mere payment is not enough."
>
> [<u>Id.</u> at 235–36.]

As the court in <u>Burlington Cnty. Country Club</u> reasoned, "[a]n acknowledgment or promise to pay an existing debt is deemed to constitute a new contract; therefore, it must support the implication of a promise to pay <u>the full amount due</u> immediately or on demand, whether made before or after the statute of limitations has run." <u>Id.</u> at 235 (emphasis added) (citing <u>Bassett v. Christensen</u>, 127 N.J.L. 259, 261 (E. & A. 1941) (holding debtor's acknowledgment of full amount of debt did not revive New Jersey statute of limitations because the acknowledgment was not accompanied by a "promise to pay at once or on demand); <u>Denville Amusement</u>, 84 N.J. Super. at 170 (App. Div. 1964)); <u>see also</u> <u>Howell v. Wallace</u>, 18 N.J. Misc. 48, 52 (Dist. Ct. 1939) (under previous New Jersey statute of limitations, partial payment did not revive debt because debtors "represented to the plaintiff with some particularity their absolute inability to pay the notes[]" which "manifestly repels the implication of a promise to immediately pay them."). More recently, a federal court relied on this principle announced in <u>Burlington Cnty. Country Club</u>. <u>See</u> <u>Genova v. Total Card, Inc.</u>, 193 F. Supp. 3d 360, 369 (D.N.J. 2016) (noting, "'[A]n acknowledgment or promise to pay an existing debt is deemed to constitute a new contract; therefore, it must support the implication of a promise to pay the

21

<u>full amount</u> due immediately or on demand.'") (quoting <u>Burlington Cnty.</u> <u>Country Club</u>, 223 N.J. Super. at 235).

Applying that principle to the present facts, Judge Espinales-Malone determined that "the Reaffirmation Agreement is only operative if it contains 'the essential terms of the contract' in the writing itself." She concluded that in this instance, the Reaffirmation Agreement was not operative because it did not contain required terms to make it a valid contract, including

> (i) any names of any loans, (ii) any dates on which such loans were made, (iii) the original principal amount of the purported loans, (iv) the parties to any loans, (v) when payment on such loans would be made in the future, or (vi) whether payment was even required at some point in the future. Accordingly, the Court does not find that either the existence of or the terms contained within the Reaffirmation Agreement prevents the application of a six-year statute of limitations.

Judge Espinales-Maloney thus concluded that the $1,000 check tendered pursuant to the Reaffirmation Agreement was insufficient to revive the debt, reasoning:

> When a partial payment is made after the statutory period has run, the party seeking to revive the statute must show (1) that the payment was partial, and (2) an act or declaration which establishes the debtor's recognition of, and intention to pay, the entire claim. Mere payment is not enough." <u>Burlington</u>, 223 N.J.

Super. at 235–36. . . . [W]hen deciding whether a partial payment revived the statute, courts must view the issue "in favor of the statute of limitations" and against anything "which will avoid its operation." Id. at 235.

Judge Espinales-Maloney added that the Reaffirmation Agreement did not show defendant's "recognition of, and intention to pay, the entire claim." Rather, she determined that the agreement "only listed the loans still outstanding and did not include any clauses detailing any sort of intention to pay the entire loan back. The Reaffirmation Agreement did not even detail a partial payment plan."

We agree with the trial court that the Reaffirmation Agreement did not satisfy the conditions of the partial payment rule because it does not "support the implication of a promise to pay the full amount due immediately or on demand.'" Genova, 193 F. Supp. 3d at 369. Rajeshkumar made no representation of an intent to pay the entire amount due either immediately or on demand. On the contrary, he made quite clear to plaintiffs that he would be unable to do so.[5]

---

[5] We add that a transcript of the secretly-recorded August 3, 2015 meeting makes clear that defendant openly explained to plaintiffs that it would not be possible for him to pay back all the money he had borrowed. Cf. Myska v. New Jersey Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)) ("[I]n evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the

As we have noted, the court in <u>Burlington Cnty. Country Club</u> summarized the common law partial payment rule as, "[w]hen a partial payment is made after the statutory period has run, the party seeking to revive the statute must show (1) that the payment was partial, <u>and</u> (2) an act or declaration which establishes the debtor's recognition of, and intention to pay, the entire claim." 223 N.J. Super. at 235 (emphasis added). Plaintiffs contend the second prong of the test set forth in <u>Burlington Cnty. Country Club</u> is an incorrect statement of the common law partial payment rule. Plaintiffs argue that all that is needed to toll or revive the statute of limitations is an intention to apply a partial payment toward the entire debt, not an intention to actually pay the entire debt. Specifically, plaintiffs argue that "to satisfy the partial payment test, the [plaintiffs] only needed to allege a sufficient act or declaration by [defendant] recognizing the larger amount and evidencing his intent that his $1,000 was to be applied to reduce that larger amount."

In support of the argument that the court in <u>Burlington Cnty. Country Club</u> misstated the partial payment rule, plaintiffs cite to the following: (1) <u>Deluxe Sales & Serv., Inc. v. Hyundai Eng'g & Const. Co., Ltd.</u>, 254 N.J. Super. 370,

complaint, matters of public record, and documents that form the basis of a claim.'").

376 (App. Div. 1992) (stating payment made with the intent of "reducing the amount" of the whole balance); (2) Romaine v. Corlies, 47 N.J.L. 108, 109 (Sup. Ct. 1885) (stating the act or declaration must show the debtor "intends to appropriate the payment upon the whole account"); and (3) Renault v. L. N. Renault & Sons, 90 F. Supp. 630, 636 (E. D. Pa. 1950) (stating the debtor must "intend[] to apply the payment on account" of the whole claim)). Plaintiffs argue these cases support the proposition that "to satisfy the partial payment test, [plaintiffs] only needed to allege a sufficient act or declaration by Rajeshkumar recognizing the larger amount and evidencing his intent that his $1,000 was to be applied to reduce that larger amount."

We disagree that the court in Burlington Cnty. Country Club misstated the common law rule, and we are satisfied that the cases plaintiffs cite do not undermine the court's rationale or conclusion. We focus our analysis on the most recent case cited by plaintiffs, Deluxe Sales & Serv. Inc., 254 N.J. Super. at 372. In that case, the plaintiff appealed the trial court's determination that its claim was barred by the statute of limitations and therefore compelled the grant of defendant's motion for summary judgment. Ibid. Plaintiff was in the business of selling trucks and associated goods; defendant Hyundai had been "a steady customer[]" for the ten years preceding the suit. Ibid. Under the business

25

arrangement, plaintiff furnished parts to Hyundai's factories throughout the world, sending Hyundai itemized invoices. Those invoices were paid with letters of credit. Ibid.

The first demand for payment was sent in February 1989 regarding invoices from the period between March 1982 to October 1985. Id. at 373. The plaintiff eventually brought suit in 1991 to compel repayment, more than five years after the date of the most recent invoice.

The trial court determined that the statute of limitations for a breach of contract claim begins to run upon breach and allows suit for six years. Id. at 374. On appeal, one of the plaintiffs relied on the partial payment rule to argue that in the case of an "ordinary running account," each payment to reduce the balance of the "account may be considered as a partial payment or acknowledgement of a counter demand." Id. at 375. The plaintiffs reasoned that their suit fell within the partial payment exception to the statute of limitations because "where a payment is expressly made upon an unpaid balance of an ordinary running account, with the express intention of acknowledging such unpaid balance and reducing the amount thereof, the matter is taken out of the bar of the statute of limitations." Id. at 376 (quoting Farbstein v. Eichmann, 23 N.J. Super. 484, 490 (App. Div. 1952)). We rejected the argument that

26                                                                      A-3184-20

payments on Hyundai's running account revived the otherwise out-of-time debt because "th[e] exception [in Farbstein] clearly [did] not apply here." Ibid. Because "each transaction was separate and distinct" and "Hyundai's payments were submitted against the most current invoices rather than the oldest balance due[,]" we held that the payments on more recent invoices were not made "with the express intention of acknowledging [the unpaid balance] and reducing the amount thereof."

Plaintiffs in the present matter contend that Deluxe Sales stands for the broad proposition that to avoid the statute of limitations, "the [plaintiffs] only needed to allege a sufficient act or declaration by [defendant] recognizing the larger amount and evidencing his intent that his $1,000 was to be applied to reduce that larger amount." The ruling in Deluxe Sales, however, does not support that interpretation of the partial payment rule, at least as applied to the type of debt incurred in the present matter. In fact, we concluded in Deluxe Sales that "it [could ]not fairly be said that payments made by Hyundai for transactions which occurred within the limitations period constituted an acknowledgment of a larger debt[]" because the payments in that case were directed toward paying recent debts, not old ones. Id. at 376–77 (citing Romaine, 47 N.J.L. at 109). Here, the same analysis fails because acknowledgment alone

is not enough.  Accepting for the purpose of argument that the arrangement between plaintiffs and Rajeshkumar involved an "ordinary running account[,]" as contemplated by <u>Deluxe Sales & Serv.</u>,[6] intent is not enough; plaintiffs must also show Rajeshkumar intended to pay "the full amount" either immediately or on demand.

We emphasize that this is not situation where there was a single promissory note.  <u>Cf.</u> <u>Vaughn v. Hankinson's Adm'r</u>, 35 N.J.L. 79, 84 (N.J. Sup. Ct 1871) (noting, "[i]f a payment is made on a promissory note, such act, of necessity, is a recognition of the amount specified in such contract").  Defendants readily acknowledge in their appeal brief that "if the debtor has a single promissory note for the purchase of a car, each monthly payment to the bank is deemed recognition of the single indebtedness that resets the limitations period."  In this instance, however, as defendants aptly observe, there are

---

[6] The exception to the statute of limitations contemplated by <u>Deluxe Sales & Serv.</u> applies "where a payment is expressly made upon the unpaid balance of an <u>ordinary running account.</u>"  254 N.J. Super. at 376.  Here, however, Rajeshkumar did not procure the fourteen successive loans from an "ordinary running account."  There was no line of credit or similar "running account" between plaintiffs and Rajeshkumar. Rather, each transaction was "separate and distinct[,]" such that another barrier to plaintiffs' argument arises:  in that case, regardless of defendant's intent in making the payment, the exception expressly related to a "running account," as compared to the "separate and distinct" transactions at issue here.

multiple distinct and separate loans evidenced by multiple standalone promissory notes. To the extent that the Reaffirmation Agreement purports to address all of the loans collectively, we reiterate and follow the rule explained in <u>Burlington Cnty. Country Club:</u> that "[a]n acknowledgment or promise to pay an existing debt is deemed to constitute a new contract; therefore it must support the implication of a promise to pay the <u>full amount</u> immediately or on demand." 223 N.J. Super. at 235 (emphasis added). As Judge Espinales-Mahoney correctly determined, the record before us—even accepting all of plaintiffs' complaint allegations as true—does not support the implication that defendant promised to pay the full amount immediately or on demand. To the contrary, defendant acknowledged to plaintiffs that he would be unable to do so.

In sum, we believe Judge Espinales-Maloney correctly determined that the common law partial payment rule does not apply in this case and that plaintiffs' complaint was thus time-barred. In reaching this conclusion, we recognize that plaintiffs are left without a remedy to recoup their substantial losses. We stress that plaintiffs' apparent lack of due diligence by agreeing to make loan after loan in the face of incessant defaults is not a relevant consideration in this appeal. Their lack of diligence in filing a timely lawsuit, in stark contrast, is at the crux of this appeal. The statute of limitations under

the UCC applies without regard to the substantive merit of the underlying claims. This is not a situation, moreover, where plaintiffs were unaware of defendant's repeated defaults and thus unable to initiate a timely cause of action. Cf., Viviano v. C.B.S., 101 N.J. 538, 546, 556 (1986) (relaxing the "mechanical application" of the statute of limitations in a personal injury action, N.J.S.A. 2A:14-2, noting that on the facts of that case, to "do otherwise would permit concealment and technicality to triumph over the interests of justice"). We are thus constrained to affirm the dismissal of plaintiffs' complaint regarding all fourteen loans because it is time-barred as a matter of law.

Because we affirm the trial court's ruling that the statute of limitations expired with respect to all fourteen loans before plaintiffs' complaint was filed, we need not address plaintiffs' contention that the trial court erred in determining that the first two oral loans also fail as a matter of law under the statute of frauds, N.J.S.A. 25:1-5(f).

Finally, we note that the Pasula defendants also filed a motion before the trial court to dismiss plaintiffs' complaint with prejudice. They argued, and Judge Espinales-Mahoney ruled, that plaintiffs' contingent claims must also be dismissed. As the Pasula defendants did not submit an answering brief, however, we decline to fabricate appellate arguments on their behalf. See

30                                                                    A-3184-20

Woodlands Cmty. Ass'n v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017) (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011)) ("An issue not briefed on appeal is deemed waived."). We note, however, that as the subjects of lis pendens, the interests of the Pasula defendants closely align with those of Rajeshkumar, and are tangentially represented in this appeal.

As to any remaining arguments that we have not specifically addressed, we are satisfied they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3184-20